UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE CUZICK,<br><br>    Plaintiff,<br><br>v.<br><br>ZODIAC U.S. SEAT SHELLS, LLC,<br><br>    Defendant. | Case No. 16-cv-03793-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Dkt. Nos. 50, 53 |

Pending before the Court are two unopposed motions in this class action. First, Plaintiff Kyle Cuzick, individually and on behalf of the settlement class as defined herein, moves for final approval of class action settlement. Dkt. No. 53. Second, Plaintiff moves the Court for an award of attorneys' fees and costs. Dkt. No. 50. The Court held a final fairness hearing on both motions on May 10, 2018. For the reasons stated below, the Court **GRANTS IN PART** the motion for final approval of class action settlement and the motion for attorneys' fees and costs.

## I. BACKGROUND

### A. Factual Background

On May 25, 2016, Plaintiff filed this action in Alameda Superior Court, alleging that Defendant's pay, meal, and rest break practices violated the California Labor Code, California Unfair Competition Law, and the Fair Labor Standards Act ("FLSA"). Plaintiff then filed the operative First Amended Complaint on June 22, 2016. *See* Dkt. No. 1-4 ("FAC"). Plaintiff asserts eight causes of action: (1) failure to provide meal periods, Cal. Lab. Code §§ 204, 223, 226.7, 512, 1198; (2) failure to provide rest breaks, *id.* §§ 204, 223, 226.7, 1198; (3) failure to pay hourly and overtime wages, *id.* §§ 223, 510, 1194, 1197, 1198; (4) failure to provide accurate written wage statements, *id.* § 226; (5) failure to timely pay all final wages, *id.* §§ 201–203;

(6) unfair and unlawful business practices, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (7) failure to compensate for all hours worked, 29 U.S.C. §§ 201 *et seq.*; and (8) statutory penalties under the Private Attorneys General Act, *id.* §§ 2698 *et seq.* FAC ¶¶ 20–134.

Plaintiff worked for Defendant in an hourly wage position as a non-exempt employee from approximately November 2015 to March 2016. *Id.* ¶ 5. During this time, Plaintiff alleges that Defendant had a policy of requiring its employees to return to their work stations on or before the thirtieth minute of their thirty-minute meal break and on or before the tenth minute of their ten-minute rest period. *Id.* ¶¶ 28, 46. Moreover, Plaintiff states that Defendant would deduct meal break and rest periods from his and other non-exempt employees' timecards, regardless of whether Defendant actually provided them. *Id.* ¶¶ 32, 64–65. On the basis of these facts, Plaintiff seeks compensatory damages, statutory penalties, restitution, attorneys' fees and costs, as well as whatever relief "the Court deems just and proper." *See id.* at 21.

### B. Settlement Agreement

Following extensive formal discovery and with the assistance of a private mediator, the parties entered into a settlement agreement. Dkt. No. 53-1 Ex. A ("SA"). The key terms are as follows:

Class Definition: All individuals who were employed by Defendant in California as non-exempt employees between May 25, 2012, and October 11, 2017. *Id.* §§ 1.16–1.17. The parties have represented that there are approximately 1,292 class members. Dkt. No. 53-1 ¶ 8.

Monetary Relief: Defendants will pay a maximum of $952,000.00 (the "Maximum Settlement Amount"), inclusive of: (a) payments to participating class members; (b) class counsel's attorneys' fees; (c) class counsel's and the class representative's litigation costs and associated expenses, which are capped at $10,000; (d) the payment to the settlement administrator for claims administration costs; (e) enhancement payments to be made by Defendant to Kyle Cuzick (f) payment to the California Labor Workforce Development Agency as part of the consideration for the release of all released claims; and (g) all payroll taxes. SA §§ 1.7, 1.8, 10.

The parties have estimated that individual class members' gross recovery, before deductions for taxes, fees, and other costs, will be approximately $737. Dkt. No. 53-1 ¶ 16.

2

Release: The class, including Plaintiff, will release Defendant from all claims, whether known or unknown, that were asserted or could have been asserted arising from or related to allegations set forth in the complaint. SA § 7.1.

Exclusion and Objection Procedures: A person in the settlement class may request to be excluded from the settlement by sending a written request. SA § 8.4. A class member may also object to the terms of the proposed settlement, the award of attorneys' fees, or Plaintiff's incentive award by sending a written objection. SA § 8.3. The class notice specified procedures for submitting a valid and timely objection or request for exclusion. *See* Dkt. No. 39-2, Exs. 1–2.

Incentive Award: Plaintiff requests a Class Representative enhancement award of $10,000. SA § 10.4. Defendant does not oppose this request. *Id.*

Attorneys' Fees and Costs: Plaintiff has filed an application for attorneys' fees not to exceed $317,333.33. SA § 10.6. Defendant does not oppose this request. *Id.*

## II. FINAL SETTLEMENT APPROVAL

### A. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect the Court's reasoning have changed since the Court provisionally certified the nationwide FLSA overtime and California overtime and vacation classes under FRCP 23(a) and (b) on October 11, 2017, this order incorporates by reference its prior analysis under Rules 23(a) and (b). *See* Dkt. No 45 at 4–7. This order also incorporates by reference its previous provisional certification of Plaintiff as class representative, and Setareh Law LLP as class counsel. *Id.* at 7. The Court affirms its previous findings and certifies the aforementioned settlement classes, class representative, and class counsel.

### B. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers*

3

*for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement amount is fair, adequate, and reasonable, and that class members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the right of the class members to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Rannis v.*

*Recchia*, 380 F. App'x 646, 650 (9th Cir. May 27, 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice").

The Court finds that the notice plan previously approved by the Court, Dkt. No. 45 at 10–12, was implemented and complies with Rule 23(c)(2)(B). As outlined in the settlement agreement, Defendant provided the third-party settlement administrator, ILYM Group, Inc. ("ILYM"), with names and email addresses for putative class members. *See* Dkt. No. 53-2 ¶¶ 5–6. After removing duplicative records, ILYM notified all known class members by first class mail. *Id.* ¶ 7. The mail notice contained information on the settlement, as well as an exclusion form. *Id.* Ex. A. ILYM was unable to complete mail notice to 70 class members. *Id.* ¶ 8. As of March 29, 2018, ILYM was able to obtain updated address information and mail new packets to 57 of these class members. *Id.* Prior to sending physical notice, ILYM ran mailing address records through the National Change of Address Database and received updated addresses. *Id.* ¶ 6. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

1. Strength of Plaintiff's Case, Risk of Further Litigation, and Risks of Maintaining Class Action Status

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

5

uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal quotation marks omitted).

This action reached settlement before the Court had an opportunity to consider the merits of the claims. But Plaintiff would face both factual and legal hurdles were the litigation to proceed. In Defendant's notice of removal, Defendant "denie[d], generally and specifically, each and every allegation, statement, and matter, and each purported cause of action contained in Plaintiff's FAC, and, without limiting the generality of the foregoing, denie[d] generally and specifically that Plaintiff has been damaged in any way at all by reason of any acts or omissions of Defendants." Dkt. No. 1-6 at 2. Plaintiff recognizes the difficulties of showing that Defendant is liable for unpaid "straight time or overtime wages." *See* Dkt. No. 53 at 12; Dkt. No 61 ¶ 17 (providing non-exhaustive list of litigation risks). Plaintiff also identifies challenges to obtaining class-wide damages under Labor Code ¶¶ 203 and 226(e). *See id.* at 13.

Considering Defendant's apparent willingness to defend against this action and the uncertain state of the law, Plaintiff was not guaranteed a favorable result. *See Duran v. US Bank Natl'l Ass'n*, 59 Cal. 4th 1, 39 and n.33 (2014) (noting difficulty in demonstrating liability for unpaid overtime wages in absence of written policy). In reaching a settlement, however, Plaintiff ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors support approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

2. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $952,000 settlement amount falls "within the range of reasonableness" in view of litigation risks and costs. Each participating class member is projected to receive a pro rata share of approximately $737 after deductions for attorneys' fees and costs, settlement administration costs, and an incentive award for Plaintiff. *See* Dkt. No. 53-1 ¶ 16. Plaintiff contends that risk-adjusted valuations for the combined claims yield a total value between $850,000 and $1,050,000. Dkt. No. 53 at 14. The settlement amount is commensurate with recoveries approved by other

California district courts. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *10–11 (N.D. Cal. Apr. 29, 2011) (granting final approval to a class action settlement awarding approximately $57 to each class member for unpaid wages); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943–44 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. Jan. 6, 2016) (granting final approval to a class action settlement awarding $15 to each claiming class member despite statutory damages ranging up to $750). The Ninth Circuit has cautioned that just because a settlement could have been better "does not mean the settlement presented was not fair, reasonable or adequate." *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

### 3. Extent of Discovery Completed and Stage of Proceedings

Class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties exchanged Rule 26(f) disclosures and discovery requests and responses. Dkt. No. 53-1 ¶ 14. The Court finds that the parties have received, examined, and analyzed the documents and materials necessary to sufficiently enable them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 4. Experience and Views of Counsel

The Court next considers the experience and views of counsel, and finds that this factor also weighs in favor of approval. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (internal quotation marks omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the class's interests in this action. *See* Dkt. No. 45 at 5–6. As discussed, class counsel initiated settlement discussions after assessing the risks and costs to continuing the litigation. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions.

7

*Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest, but favors approval.

5. Governmental Participation

This factor is inapplicable to the Court's analysis because no governmental entity participated in this matter.

6. Reaction of Class Members

The reaction of the class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served on each class member in accordance with the methods approved by the Court, advised the class of the requirements regarding objections and exclusions. *See* Dkt. No. 53-2. ILYM received no objections to the settlement, but did receive three requests for exclusion, equal to .23 percent of the class. *Id.* ¶¶ 11–13. The Court finds that the absence of objections and low number of opt-outs indicates support among the class members, constitutes a positive reaction, and weighs in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where forty-five of approximately 90,000 class members objected).

### c. Incentive Award

Class counsel requests an award of $10,000 for named Plaintiff, which Defendants also do not oppose. *See* Dkt. No. 53 at 16–17. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez,* 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in

bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* at 1165. The court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977.

Here, the Court finds that the named Plaintiff added substantial value to this case. Class counsel asserts that Plaintiff has put himself at risk by filing a lawsuit against his employer. Dkt. No. 53 at 17. In addition, class counsel notes that Plaintiff has been actively involved with the case since it was filed in 2016, and that Plaintiff participated with class counsel to prepare the action and to review and discuss settlement documents. *Id*.

Numerous courts have found that a $5,000 incentive award is "presumptively reasonable" in the Ninth Circuit. *See*, *e.g.*, *Smith*, 2016 WL 362395, at *10 (rejecting $7,500 incentive award where class members were estimated to receive $1,608.16); *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015) (rejecting $11,000 incentive award where class members were estimated to receive between $600 and $4,000); *Ko v. Natura Pet Prod., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (awarding $5,000 incentive award for 50–100 hours in contributions over two-year litigation). Plaintiffs' counsel has not justified the discrepancy between a $10,000 incentive award and the estimated payout to class members of less than $1,000. The Court therefore authorizes payment of an enhancement award of $5,000 to the named Plaintiff.

### III. MOTION FOR ATTORNEYS' FEES

In its second unopposed motion, class counsel asks the Court to approve an award of $317,333.33 in attorneys' fees and a maximum of $10,000 in costs. Dkt. No. 50 at 8, 11.

//

9

### A. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either the (1) percentage-of-the-fund, or (2) lodestar method when calculating reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (*citing Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

"[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal quotation marks omitted). Generally, "the relevant community is the forum in which the district court sits." *Id*. (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates

may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 688 (N.D. Cal. 2016).

Although "the choice between lodestar and percentage calculation depends on the circumstances . . . either method may . . . have its place in determining what would be reasonable compensation for creating a common fund." *Six Mexican Workers*, 904 F.2d at 1311 (internal quotation marks omitted). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51.

"The district court *must* apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.' Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016). The Court also may adjust the lodestar "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941–42 (9th Cir. 2011).

Here, class counsel seeks $317,333.33, or thirty-three percent of the settlement amount, which is above the twenty-five percent benchmark for a reasonable fee award. *See* Dkt. No. 50 at 7–8. To justify this upward departure, class counsel states that this figure is commensurate with what its attorneys' fees would be under the lodestar method, which would be $240,412.50, after application of a risk multiplier of approximately 1.32. *See id.* at 8–9.

To calculate its lodestar, class counsel contends that it will expend a combined 399.8 hours on this case. Dkt. No. 50 at 9. One attorney requests a billing rate of $700 per hour for 52.95 hours of work, one attorney requests a billing rate of $650 per hour for 284.75 hours of work, one attorney requests a billing rate of $350 per hour for 8.6 hours of work, one attorney requests a billing rate of $400 per hour for 12.5 hours of work, and one attorney requests a billing rate of

11

$250 per hour for 41 hours of work. *Id.* Applying these rates to these hours, Plaintiffs calculate the lodestar to be $240,412.50. *Id.*

Having reviewed class counsel's supplemental filings, the Court finds that the billing rates used by class counsel to calculate the lodestar are reasonable and generally in line with prevailing rates in this District for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4063144, at *4 (N.D. Cal. Aug. 15, 2014) (collecting cases, and finding prevalent rates ranging from $400 for associates to $750 for partners litigating civil rights and employment cases in this District). In addition, having carefully reviewed the documentation provided by class counsel, the Court finds that the number of hours expended in this action was reasonable given the length of the case and its procedural posture.

The Court requested a supplemental declaration from class counsel to address the factors identified in *Stetson* and justify the requested multiplier of approximately 1.32. Dkt. No. 60. Class counsel timely filed that declaration on May 24, 2018. Dkt. No. 61. Class counsel attests that it "took this case with the expectation that a risk enhancement, either in the form of a lodestar multiplier or a percentage of the fund award equivalent thereto, would be available." Dkt. No. 61 ¶ 8. Counsel further describes how its "[h]ourly rates…are not set based on an expectation of nonpayment," and that its rates "are in line with market hourly rates for complex litigation matters." Dkt. No. 61 ¶¶ 11–12. The Court has already discussed the risks to the class of further litigation of this case. *See* § II(B)(b)(1).

Plaintiffs' counsel's lodestar calculation represents almost exactly twenty-five percent of the settlement fund, placing it in line with the Ninth Circuit's presumptively reasonable benchmark. *See In re Bluetooth Headset,* 654 F.3d at 942. The Court, upon review of counsel's filings, finds that a lodestar multiplier is warranted here, based most heavily on the above-described litigation risks and the quality of the result obtained for the class (*i.e.*, a substantial cash payment of over $700 to each class member). The Court therefore finds that a multiplier of 1.2 is appropriate, and **SETS** class counsel's attorneys' fees at just over thirty percent of the total settlement amount, or $288,495.

### B. Attorneys' Costs

Class counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted). Class counsel seeks reimbursement of no more than $10,000 in litigation costs. *See* Dkt. No. 50 at 11. Class counsel presents documentation that costs, including mediation fees, travel, research, printing, postage, service charges, and filing fees, exceed $10,000. *Id.*; *see also* Dkt. No. 53-1 Ex. B. The Court, upon review of counsel's filings, finds the request for costs reasonable, and therefore **GRANTS** class counsel's request for costs of $10,000.

## IV. CONCLUSION

For the foregoing reasons it is hereby ordered that:

a. Plaintiff's Motion for Final Approval of Class Action Settlement and Plaintiff's Motion for Attorneys' fees are **GRANTED IN PART.**

b. The Court approves the settlement amount of $952,000, including payments of attorneys' fees in the amount of $288,495; costs of $10,000; and an incentive fee for the named Plaintiff in the amount of $5,000.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are directed to submit a joint proposed judgment for approval by June 1, 2018.

**IT IS SO ORDERED.**

Dated: 5/29/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge